IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

     v.

JOHN J. O'BRIEN, ET AL.

No. 12-CR-40026-WGY

## MOTION TO SEVER COUNTS AND RACKETEERING/OVERT ACTS

Defendants, John O'Brien, Elizabeth Tavares, and William Burke, respectfully move, pursuant to Fed. R. Crim. P. 8(a) and 14(a), for severance of the counts and racketeering/overt acts concerning the two separate and distinct "schemes" charged in the indictment: the "scheme to defraud" and the "ELMO hiring scheme." Substantive counts and alleged racketeering/overt acts relating each scheme should be tried separately.

Mindful of this Court's direction at the hearing on March 13, 2014, to streamline the case for trial, defense counsel have re-analyzed the indictment in structure and substance. For the reasons set forth below, the proposed severance is sensible as a matter of judicial economy and also avoids unfair prejudice that arises from the joinder of separate and distinct schemes involving separate employment decisions and discrete conduct by different defendants.

Defense counsel have discussed this proposal for severance with the government, which opposes this motion.

### Background

The original indictment against the defendants was returned on March 22, 2012. Dkt. #2. It alleged that during O'Brien's tenure as Commissioner of the Massachusetts Probation Service, the defendants made misrepresentations during the process of hiring permanent employees in order to conceal the fact that they were hiring politically "sponsored" candidates instead of the

1

"most qualified" applicants.  The original indictment specified 22 instances in which individuals were allegedly hired or promoted pursuant to this scheme.  The government charged these actions in twelve counts:  racketeering conspiracy, racketeering, and ten counts of mail fraud.  At root, the indictment was based on mail fraud; the 22 racketeering acts were discrete employment decisions, each of which was allegedly an instance of mail fraud.  The ten hiring decisions that were not outside the statute of limitations were also charged as substantive counts of mail fraud.

Meanwhile, the government conducted an ongoing grand jury investigation.  In early 2013, nearly a year after the original indictment was returned, prosecutors told counsel and the Magistrate Judge that they had uncovered an entirely new "scheme."  A superseding indictment adding charges related to this new so-called "scheme" was returned on April 24, 2013.  Dkt. #113.  A second superseding indictment, which made certain changes irrelevant to this motion, followed on August 21, 2013.  Dkt. #139.

The superseding indictment made two major changes: 1) it added bribery charges related to the 22 hiring decisions discussed in the original indictment; and 2) it added allegations regarding the new, separate "scheme."  This new scheme, which implicates only O'Brien, involves temporary hiring decisions made for positions with Probation's electronic monitoring program (ELMO) in 2007 and 2008.  The government asserts that O'Brien gave legislators "the opportunity to place political supporters, friends, and constituents" in these temporary ELMO jobs "to favorably influence and attempt to favorably influence the decisions of those legislators regarding legislative and budget matters affecting" Probation.  2d Sup. Ind. at 23.  The indictment specifies eighteen individuals who were hired to work as temporary ELMO employees as a result of this scheme.  Eleven of these hiring decisions, those not barred by the statute of limitations, are also alleged as substantive bribery charges under 18 U.S.C. § 666.  This

2

alleged scheme rests entirely on bribery charges and does not involve mail fraud.

The indictment makes this division clear; it speaks of the "scheme to defraud" and the "ELMO hiring scheme."  The "scheme to defraud" relates to the 22 hires charged in the original indictment, and the "ELMO hiring scheme" relates to the 18 hires related to conduct the government later "uncovered" and charged in 2013.  The racketeering conspiracy and racketeering charges (counts 1-2) reference both schemes, but separate the conduct related to each.  Racketeering acts 1-22 allege mail fraud in connection with the "scheme to defraud," acts 23(a)-44(a) allege state law bribery offenses in connection with the "scheme to defraud," and acts 23(b)-44(b) allege state law gratuity offenses in connection with the "scheme to defraud." Racketeering acts 45(a)-62(a) allege state law bribery offenses in connection with the "ELMO hiring scheme," and acts 45(b)-62(b) allege state law gratuity offenses in connection with the "ELMO hiring scheme."  Count 13 charges conspiracy to commit bribery in violation of 18 U.S.C. § 666(a)(2). This count references both schemes, but it draws a clear distinction between the facts related to the hires charged in the original indictment and the "ELMO hires."  The substantive charges are also easily divided.  Counts 3-12 allege mail fraud in connection with the "scheme to defraud.  Counts 14-19 charge bribery in violation of § 666 in connection with the "scheme to defraud."  Counts 20-30 charge O'Brien alone with bribery in violation of § 666 in connection with the "ELMO hiring scheme."

## I.   COUNTS RELATING TO THE SEPARATE SCHEMES ARE NOT PROPERLY JOINED.

Fed. R. Crim. P. 8(a) provides:

> The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged -- whether felonies or misdemeanors or both -- are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

3

In the ordinary case, the basis for joinder under Rule 8 "should be discernible from the face of the indictment." *United States v. Natanel*, 938 F. 2d 302, 306 (1st Cir. 1991). The remedy for misjoinder is severance. *See id.*

### A. Joinder is Inappropriate Under the "Same or Similar Character" Provision.

Rule 8(a)'s provision for joinder of offenses that are of the "same or similar character" is controversial. The First Circuit has questioned why Congress would have provided for joinder of offenses that have the "same or similar character," noting that the "same or similar" language was "drawn from earlier law without explanation," and that "about the best one can say is that in such cases the evidence of one crime is more likely to be independently admissible, on theories reflected in Fed. R. Evid. 404(b)[.]" *United States v. Randazzo*, 80 F.3d 623, 628, n.1 (1st Cir. 1996). The Second Circuit has observed that the "customary justifications for joinder (efficiency and economy) largely disappear" when "all that can be said of two offenses is that they are of the 'same or similar character." *United States v. Halper*, 590 F.2d 422, 430 (2d Cir. 1978). [T]he only time likely saved by joinder of "same or similar character" offenses is the time spent selecting a jury ... On the whole, however, the "trials" on the joined charges are distinct. At the same time, the risk to the defendant in such circumstances is considerable. *Id.*

The "scheme to defraud" and the "ELMO hiring scheme" should not be joined under this provision. Both alleged schemes involve hiring, but they rest on very different factual allegations. The "scheme to defraud" involves routine, permanent hiring at Probation. All of the hiring decisions at issue involved the same application and interview process, and the charges are based on the allegation that the defendants falsified this process in order to hire politically "sponsored" candidates. Essentially, the government alleges that the defendants manipulated a certain hiring process. The "ELMO hiring scheme," in contrast, involves a situation in which the

Chief Justice for Administration and Management (CJAM) permitted O'Brien to hire some employees on a temporary basis in order to get the new, legislatively-mandated electronic monitoring program started.  The government alleges that O'Brien then hired individuals selected by legislators in order to curry favor with those legislators.  The hiring decisions related to this "scheme" do not involve the same application or interview process as the "scheme to defraud" hires.  In essence, with regard to the ELMO scheme, the government alleges that O'Brien used no hiring process at all.

### B.  Joinder is Inappropriate Under the "Same Act or Transaction" Provision.

Joinder under Rule 8(a) is proper if both sets of charges share common facts.  *See Randazzo*, 80 F.3d at 628.  Courts have looked to whether "the same evidence would be admissible in both trials if the counts were severed."  *United States v. Fenton*, 367 F.3d 14, 22 (1st Cir. 2004) (no plain error in failing to sever pipe bomb and drug conspiracy charges where indictment charged use of pipe bomb in furtherance of the drug conspiracy).  "In determining whether counts are properly joined, this court considers such factors as 'whether the charges are laid under the same statute, whether they involve similar victims, locations, or modes of operation, and the time frame in which the charged conduct occurred.'" *United States v. Edgar*, 82 F.3d 499, 503 (1st Cir. 1996) (quoting *United States v. Taylor*, 54 F.3d 967, 973 (1st Cir. 1995)).

Cases considering Rule 8(b), which governs the joinder of defendants, are instructive.  Rule 8(b) allows joinder if defendants are found to have engaged in the "same act or transaction, or in the same series of acts and transactions."  As one court observed in ordering relief from misjoinder under 8(b) in a multi-defendant indictment alleging two distinct conspiracies:

> Of course, in the broadest sense, both conspiracies are part of the same series of
> acts or transactions constituting offenses -- just as the 1995 World Series was part

> of the same series of acts or transactions that began with Abner Doubleday. But, as this example demonstrates, Rule 8(b) cannot possibly be read so broadly if it is to have any practical meaning.

*United States v. Kouzmine*, 921 F. Supp. 1131, 1133 (S.D.N.Y. 1996). "If the factual matrices of

the alleged facts are different, there is no series and hence no joinder." *United States v. Turkette*,

F. 2d 896, 908 (1st Cir. 1980), reversed on other grounds, 452 U.S. 576 (1981).

There is very little evidentiary overlap between the "scheme to defraud" and the "ELMO

hiring scheme." Each of the charged schemes involves not only different hiring decisions but an

entirely different hiring process under internal Trial Court policies. The government's case

related to the "scheme to defraud" will likely include testimony from the individuals who

received the jobs, as well as the Probation employees and judges who interviewed those

individuals. Few, if any of these people have testimony relevant to the "ELMO hiring scheme."

The "ELMO hiring scheme" relates to the inception of a single, narrow program within

Probation. The individuals hired to work for ELMO did not work in the local courts and did not

go through the same hiring process used with probation officers. The government's case will

likely focus on testimony from the individuals hired, as well as the legislators who were

allegedly instrumental in their hiring. The evidentiary separation between these alleged schemes

is underscored by the fact that O'Brien is the only defendant charged in connection with the

"ELMO hiring scheme."

### C. Joinder is Inappropriate Under the "Common Scheme or Plan" Provision.

Joinder is proper under the rubric "common scheme or plan" if one illegal activity

provided the motive and necessity for another illegal activity. *See United States v. Dominguez*,

226 F.3d 1235, 1239 (11th Cir. 2000) (mortgage fraud and drug charges properly joined, where

defendant submitted fraudulent income tax returns when applying for mortgage loans in order to

conceal that his income was derived from drug sales).  Joinder of counts that are not sufficiently "connected" may require reversal.  *See United States v. Litwok*, 678 F.3d 208, 216 (2d Cir. 2012) (reversing defendant's convictions for mail fraud and tax fraud).

The "scheme to defraud" and the "ELMO hiring scheme" are not part of a common scheme or plan.  Neither was occasioned by the other; they are separate allegations about different aspects of hiring at Probation.

## II. THE TWO "SCHEMES" SHOULD BE SEVERED TO AVOID THE UNFAIR PREJUDICE THAT WOULD RESULT FROM A JOINT TRIAL.

Even if offenses are properly joined, the Rule 14(a) authorizes severance if the joinder of offenses causes prejudice.  Fed. R. Crim. P. 14(a) ("If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."); *see also Fenton*, 367 F.3d at 21-22.  The First Circuit has stated that "Rule 8(a)'s joinder provision is generously construed in favor of joinder, [citations omitted], in part because Fed. R. Crim. P. 14 provides a separate layer of protection where it is most needed."  *Randazzo*,  80 F.3d  at 627.  To obtain a severance of joined counts, a defendant must make a strong and convincing showing of prejudice.  *See United States v. Richardson*, 515 F.3d 74, 81 (1st Cir.2008), cert. denied, 553 U.S. 107 (2008).  Three types of prejudice may result from trying a defendant for several offenses during the same trial:

> (1) the defendant may become embarrassed or confounded in presenting separate defenses; (2) proof that defendant is guilty of one offense may be used to convict him of a second offense, even though such proof would be inadmissable in a second trial for the second offense; and (3) a defendant may wish to testify in his own behalf on one of the offenses but not another, forcing him to choose the unwanted alternative of testifying as to both or testifying as to neither.

*Id.* (quoting *United States v. Jordan*, 112 F.3d 14, 16 (1st Cir. 1997)).

Here, the prejudice that would arise from a joint trial warrants severance.  If the two charged schemes are not severed, the jury will hear evidence of two unrelated alleged improprieties in hiring.  This could lead jurors to impermissibly conclude that either of the schemes is more likely to have occurred.  This prejudice is particularly acute with respect to defendants Tavares and Burke.  They are not charged in connection with the "ELMO hiring scheme," and apparently had no role in those hiring decisions.  The jury would have to be instructed that it cannot consider evidence related to the "ELMO hiring scheme" when determining their guilt or innocence.  As this Court noted at a March 13, 2014, hearing, this case, as charged, will be long and complicated.  This complication reduces the likelihood that the jury will be able to follow such limiting instructions and to properly cabin the evidence related to the two charged schemes.

The "scheme to defraud" and the "ELMO hiring scheme" are entirely distinct.  They allege different conduct, involve different witnesses and defendants, and are differentiated by the indictment.  Trying these alleged schemes together will result in a long and complicated trial that will prejudice all of the defendants.  The counts and racketeering acts involving the "scheme to defraud" should, thus, be severed from the counts and racketeering/overt acts related to the "ELMO hiring scheme."

**Conclusion**

For the foregoing reasons, the schemes should be severed tried separately.

Respectfully submitted,

JOHN J. O'OBRIEN
by his attorneys

 /s/ Stylianus Sinnis
Stylianus Sinnis, Esq.
William W. Fick, Esq.

8

Christine DeMaso, Esq.
FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street, 5th Floor
Boston, MA 02210
617-223-8061
STELLIO_SINNIS@FD.ORG
WILLIAM_FICK@FD.ORG
CHRISTINE_DEMASO@FD.ORG


ELIZABETH V. TAVARES
by her attorney,

/s/ Brad Bailey
R. Bradford Bailey, Esq.


WILLIAM H. BURKE, III
by his attorney,

/s/ John Amabile
John Amabile, Esq.

### Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 21, 2014.

/s/ Stylianus Sinnis